**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

SARAH R. GOVAN,

                              Plaintiff,

              -against-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/6/2024

22-CV-8997 (VF)

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

        Plaintiff Susan R. Govan seeks judicial review of a final determination by Defendant the

Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying

Govan's application for Disability Insurance Benefits under Title II of the Social Security Act

(the "Act"). Before the Court is Govan's motion for judgment on the pleadings and the

Commissioner's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. For the reasons set forth below, Govan's motion is

**GRANTED**, and the Commissioner's cross-motion is **DENIED**.

1

## BACKGROUND[1]

### A. Procedural History

On November 20, 2014, Govan filed her application for Disability Insurance Benefits ("DIB"), alleging August 19, 2014, as the onset date of her disability. ECF Nos. 15-17, SSA Administrative Record ("R.") at 95-96, 188-89.[2] When Govan applied for DIB, she alleged disability based on "hand pains []," "neck pains," carpal tunnel, diabetes, asthma, allergies, vision problems, and fibromyalgia.[3] Id. at 95. Govan's claims for DIB were initially denied on January 7, 2015, id. at 106-111, and on February 27, 2015, Govan filed a written request for a hearing before an administrative law judge, id. at 112.

On February 7, 2017, Govan appeared without representation before Administrative Law Judge Dina Loewy at a hearing in Jersey City, New Jersey. Id. at 67-93. On November 28, 2017, Administrative Law Judge Loewy issued a written decision, finding that Govan had not been under a disability within the meaning of the Act from August 19, 2014, through the date of the decision. Id. at 11-24. Govan requested that the SSA Appeals Council review Loewy's decision. Id. at 183-84. Her request was denied on October 11, 2018. Id. at 1-5.

---

[1] Page citations herein to documents filed on ECF are to the original pagination in those documents.

[2] The voluminous Administrative Record was filed on the electronic docket in multiple parts. See ECF Nos. 15-17. The citations to the Administrative Record herein are to the original pagination across the entire record.

[3] Dorland's Illustrated Medical Dictionary defines fibromyalgia as "pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." *Fibromyalgia*, Dorland's Illustrated Medical Dictionary (33d ed. 2020). Diffuse means "not definitely limited or localized; widely distributed." *Diffuse*, Dorland's Illustrated Medical Dictionary (33d ed. 2020).

On December 15, 2018, Govan commenced a civil action in this Court seeking review of the administrative determination. Id. at 885-95; see Case No. 18-CV-11771 (SN), ECF No. 1. By Stipulation and Order dated November 13, 2019, the Court remanded Govan's case to the Commissioner for further proceedings. See id. ECF No. 32. The Appeals Council vacated Administrative Law Judge Loewy's decision on December 11, 2019, and remanded Govan's case to another administrative law judge with instructions to: (1) re-evaluate any medical evidence related to Govan's use of a walker; (2) obtain additional evidence of Govan's impairments from "Dr. Sparr (neurologist), Dr. Terecca (vascular), Dr. Broder (rheumatology), Dr. Johnson (diabetes), and Dr. Washington (primary care)" to complete the administrative record; (3) give further consideration to the treating and non-treating source opinions from Dr. Morice and Dr. Revan; (4) obtain evidence from a medical expert related to the nature, severity of, and functional limitations of Govan's impairments; (5) further consider Govan's residual functional capacity ("RFC"); and (6) obtain supplemental evidence from a vocational expert if warranted by the expanded record. R. at 899-904. In its Order, the Appeals Council stated that one issue requiring remand was that the administrative law judge "did not properly evaluate the medical source opinion evidence from claimant's treating physician, Karen L. Morice, M.D." Id. at 901.

On April 7, 2021, Govan, this time with counsel, appeared before Administrative Law Judge John Carlton (hereinafter, the "ALJ") for a hearing in the Bronx, New York. Id. at 849-84. On August 24, 2022, the ALJ issued a written decision, again denying benefits.[4] Id. at 773-99.

_____

[4] Govan claims that she requested review of the ALJ's decision by the SSA Appeals Council, but the Council declined her request. Pl.'s Br. at 7-8. Plaintiff, however, provides no citation to the Administrative Record for support, and there does not appear to be any indication in the Administrative Record that Govan requested a review of the ALJ's decision. Defendant, however, does not contest that Govan sought review of the determination.

On October 21, 2022, Govan commenced the instant action seeking judicial review of the ALJ's decision. See ECF No. 1 ("Compl."). On March 29, 2023, the Commissioner filed the Administrative Record, which constituted his answer.[5] ECF Nos. 15-17. Thereafter, on June 13, 2023, Govan moved for judgment on the pleadings, seeking a remand pursuant to sentence four of 42 U.S.C. Section 405(g) and (b). ECF Nos. 24-25. On August 10, 2023, the Commissioner submitted his opposition and a cross-motion for judgment on the pleadings. ECF Nos. 28-29. Govan did not file a reply to the Commissioner's opposition.

### B. Medical Evidence

The parties' memoranda in support of their motions for judgment on the pleadings provide summaries of the medical evidence contained in the administrative record. See ECF No. 25 ("Pl.'s Br.") at 7-13; ECF No. 29 ("Def.'s Br.") at 2-6. The Court has examined the record, and the parties have accurately stated its contents. Although the parties focus on different aspects of the record at times, there are no inconsistencies in the parties' recounting of the medical evidence. Moreover, no party has objected to the other's summary of the medical evidence. The Court therefore adopts the parties' summaries as complete for purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' summaries where they were "substantially consistent with each other" and neither party objected to the

---

[5] The named defendant when this action commenced was Acting Commissioner Kilolo Kijakazi. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit. See Fed. R. Civ. P. 25(d) (permitting automatic substitution of a party who is a public official sued in her official capacity when the public official "ceases to hold office" while a suit is pending).

opposing party's summary). The medical evidence in the record is discussed below to the extent necessary to address the issues raised in the pending cross-motions.

## DISCUSSION

### A. Legal Standards

#### 1. Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted).

#### 2. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 407 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and

means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curium) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

3. <u>Commissioner's Determination of Disability</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see</u> <u>id.</u> § 1382c(a)(3)(A). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); <u>see</u> <u>id.</u> § 1382c(a)(3)(B). In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" <u>Mongeur</u>, 722 F.2d at 1037 (quoting <u>Gold v. Sec'y of H.E.W.</u>, 463 F.2d 38, 41 (2d Cir. 1972)). The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Id.</u> (citations omitted); <u>accord</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); <u>Craig v. Comm'r of Soc. Sec.</u>, 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

<u>Five-Step Inquiry</u>

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" <u>Estrella v. Berryhill</u>, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20

C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. § 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

### Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, such as Govan's application, the "treating physician rule" applies, which requires an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant.[6] See 20 C.F.R. § 416.927(c)(2); see also Taylor v. Barnhart, 117

---

[6] On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017. See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5869-70, 2017 WL 168819 (Jan. 18, 2017). As Govan's application was filed in November 2014, those revisions do not apply here. See Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

F. App'x 139, 140 (2d Cir. 2004). Under the "treating physician" rule, in general, the ALJ must give "more weight to medical opinions" from claimant's "treating sources" when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources, which include some professionals other than physicians, see id. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," id. §§ 404.1527(c)(2), 416.927(c)(2).

Social Security Administration regulations, as well as Second Circuit precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. See Estrella, 925 F.3d at 95-96. At the first step, "the ALJ must decide whether the opinion is entitled to controlling weight." Id. at 95. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (second alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "'[M]edically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" Id. (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).

If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ "must determine how much weight, if any, to give" the opinion. Estrella, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the so-called "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence;

and (4) whether the physician is a specialist." Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129). An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight to a medical opinion of a treating physician is a procedural error. Selian, 708 F.3d at 419-20.

The ALJ must "give good reasons" in its decision for the weight attributed to the treating physician's medical opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific." LaTorres v. Comm'r of Soc. Sec. Admin., 485 F. Supp. 3d 482, 492 (S.D.N.Y. 2020) (quoting Harris v. Colvin, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016)) (internal quotation marks omitted). The ALJ's failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129-30); see also Estrella, 925 F.3d at 96. A "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32). Even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed.'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

The Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted). In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.

2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

**B. <u>The ALJ's Decision</u>**

On August 24, 2022, the ALJ issued his decision, R. at 773-99, finding that Govan was not disabled under the Act. <u>Id.</u> at 788. The ALJ began by explaining the five-step process for determining whether an individual is disabled. <u>Id.</u> at 778-79.

As a threshold matter, the ALJ found that Govan last met the insured status requirements of the Act on December 31, 2017. <u>Id.</u> at 779. At step one, the ALJ found that Govan had not engaged in substantial gainful activity from August 19, 2014, through December 31, 2017. <u>Id.</u> At step two, the ALJ found that Govan had seven severe impairments: (1) degenerative disc disease at the lumbar and cervical spine; (2) bilateral carpal tunnel syndrome post release; (3) fibromyalgia; (4) diabetes; (5) superficial venous insufficiency; (6) asthma; and (7) obesity. <u>Id.</u>

At step three, the ALJ found that Govan "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR. Part 404, Subpart P, Appendix 1 (20 CFR. 404.1520(d), 404.1525, and 404.1526)." <u>Id.</u> at 781. Before proceeding to step four, the ALJ found that Govan maintained the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except [Govan] cannot climb ladders, ropes, or scaffolds." <u>Id.</u> at 782. Specifically, the ALJ found that Govan can "occasionally use ramps but cannot use stairs"; she can "occasionally balance, stoop, and crouch but cannot kneel or craw[l]"; Govan can "frequently reach in all directions bilaterally but cannot reach overhead bilaterally"; she "can frequently finger, feel, and handle bilaterally"; she "must work indoors in a temperature controlled environment with no exposure to excessive gases, fumes, odors, dust, pollen, heat, humidity"; and she cannot "be exposed to pulmonary irritants" or "unprotected heights or

hazardous machinery." Id. Lastly, the ALJ stated that Govan could work "in an office environment." Id.

In considering Govan's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Id. at 782. The ALJ analyzed Govan's impairments, and after considering the evidence, found that even though Govan's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Govan's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id. at 783. The ALJ also independently evaluated the medical opinions of Dr. Sharon Revan, a consultive examiner, and Dr. Karen Morice, Govan's treating physician, and determined whether to assign each opinion "some weight" or "little weight." Id. at 785-87.

At step four, the ALJ found that Govan had no past relevant work. Id. at 787. At step five, the ALJ considered Govan's "age, education, work experience, and [RFC]," and found that "there were jobs that existed in significant numbers in the national economy that [Govan] could have performed." Id. Based on testimony from a vocational expert ("VE") and in conjunction with the Medical-Vocational Guidelines, the ALJ concluded that Govan was "not disabled" because she was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." Id. at 787-88. The ALJ cited the VE's testimony that given Govan's age, education, work experience, and RFC, such an individual would be able to perform work as a: (1) order clerk (DOT #209.576-014); (2) document preparer (DOT

#249.587-018); or (3) envelope addresser (DOT #209.587-010). Id. at 788. Accordingly, the ALJ concluded that Govan "was not under a disability" within the meaning of the Act "from August 19, 2014, the alleged onset date, through December 31, 2017, the date last insured." Id. at 788 (citing 20 C.F.R. § 404.1520(g)).

### B. The ALJ Did Not Comply With The Treating Physician Rule

Govan attacks the ALJ's determination on three grounds. Govan asserts that the ALJ: (1) failed to give controlling weight to the opinion of Govan's treating physician, Dr. Morice; (2) relied on erroneous VE testimony concerning the existence of jobs in the national economy that Govan could perform; and (3) the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Br. at 17-24. Govan is correct that the ALJ failed to properly evaluate the medical opinion evidence of her treating physician. That basis alone is sufficient for a remand. See Rivera v. Berryhill, No. 17-CV-991 (JLC), 2018 WL 4328203, at *14 (S.D.N.Y. Sept. 11, 2018) (remanding based on conclusion that ALJ failed to consider all of the relevant factors necessary for discounting a treating physician's opinion and failed to give good reasons for declining to give the opinion controlling weight).

Under the "treating physician" rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating source"—as defined in the regulations—when determining whether the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); accord Morales v. Berryhill, 484 F. Supp. 3d 130, 142 (S.D.N.Y. 2020). However, if there are genuine conflicts in the medical evidence, the Commissioner may resolve them and find that the treating physician's opinion is not entitled to controlling weight. Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 7 (2d Cir. 2017) (summary order) (citing Veino, 312 F.3d at 588). Stated differently, the opinion of the treating physician is not entitled to controlling weight where the

opinion is "not consistent with other substantial evidence in the record" or the opinion is not well-supported. Halloran, 362 F.3d at 32; see also Ratliff v. Barnhart, 92 F. App'x 838, 840 (2d Cir. 2004). "When controlling weight is not given to a treating physician's assessment, the ALJ must consider the following factors," also known as the Burgess factors: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors." Monroe, 676 F. App'x at 7 (citing 20 C.F.R. § 404.1527(c)). The ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. Id. (citation omitted).

In his assessment of the medical evidence, the ALJ considered the opinion evidence of Dr. Revan and Dr. Morice. R. at 785-87. Dr. Revan, a consultative internist who had "no doctor-patient relationship" with Govan, conducted examinations of Govan on December 20, 2014, and January 26, 2016. Id. at 550-54, 565-69. Those were the only times Dr. Revan examined Govan. During the December 2014 examination, Dr. Revan opined that Govan had "no limitations with her speech, vision or hearing." He further opined that Govan had moderate limitation with: "the upper extremities for gross motor activities due to her shoulder pain"; "lying, sitting, standing, and climbing stairs due to her body pains"; and "for personal grooming and activities of daily living secondary to fibromyalgia." Id. at 553-54. At the January 2016 examination, Dr. Revan opined that Govan had "no limitations with speech, vision, or hearing." Id. at 569. He further opined that Govan had "mild-to-moderate limitations with the upper extremities for gross manual activities due to pain," "mild-to-moderate limitations with lying, sitting, standing, and climbing

stairs due to her fibromyalgia and cramping," and "mild-to-moderate limitations for personal grooming and activities of daily living, secondary to fibromyalgia." Id.

Dr. Morice is a physiatrist who saw Govan five times between March 2014 and December 2014. Id. at 499-502, 529-49, 560-64. On July 14, 2015, Dr. Morice completed a Fibromyalgia Medical Evaluation Form. Id. at 560-64, 1241-45. In the form, Dr. Morice opined that Govan has limited range of motion in her lumbar spine when it was "assessed on physical exam"; had bilateral pain in her shoulders, hands/fingers, legs, and her spine; and Govan's impairments and treatments would cause her to "be absent from work activities . . . more than three times a month." Id. at 563-64. Dr. Morice also opined that Govan suffered from "diffuse pain, especially in the posterior neck, low back, hands, and down the legs, consistent with fibromyalgia." Id. at 560. Dr. Morice also identified that Govan was taking diazepam and nortriptyline, but that neither helped with her pain. Id. at 562. Dr. Morice did not provide an opinion on Govan's abilities to reach, bend/twist at the waist, sit, stand, walk, or carry. Id. at 563-64.

As a threshold matter, Dr. Morice qualifies as a "treating source" under SSA Regulations. A treating source is an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). Generally, a physician who has examined a claimant once or twice is not considered a treating physician. See id. However, there is no minimum number of visits or period of treatment by a physician before an ongoing treatment relationship can be established. Id. (ongoing treatment relationship can be established by medical source "who has treated or evaluated [the claimant] only a few times . . . if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)"). In determining whether

a physician qualifies as a treating physician, courts have advised that the focus should be "on the nature of the ongoing physician-treatment relationship, rather than its length." Vasquez v. Colvin, No. 14-CV-7194 (JLC), 2015 WL 4399685, at *20 (S.D.N.Y. July 20, 2015) (internal alteration and quotation marks omitted) (citing Schisler v. Bowen, 851 F.2d 43, 45 (2d Cir. 1988)); see also Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 55 (2d Cir. 1992) ("The nature— not the length—of the [physician-patient] relationship is controlling."); Vargas v. Sullivan, 898 F.2d 293, 294 (2d Cir. 1990) (applying treating physician rule where doctor saw patient for only three months).

Dr. Morice's treatment notes indicate that she treated Govan for her "diffuse pain" and "fibromyalgia" from March 2014 to December 2014. R. at 499-502, 529-49. During that time, Dr. Morice saw Govan at least five times. Id. at 499-502, 229-49, 560-64; see also id. at 369 (Dr. Morice's letter from August 2014 stating that Govan was under her care). Dr. Morice performed manual muscle testing; "special tests" related to Govan's spine, hips, and legs; gait and sensation testing; referred Govan for x-rays; and established a treatment plan for Govan after each appointment. Id. at 529-32.

Courts have inferred the existence of a treating relationship in circumstances where the duration of the physician-patient relationship and frequency of a claimant's visits with the physician were less than the duration and frequency here. For example, in Nunez v. Berryhill, a physician who met with the claimant three times over the course of three months was considered a treating source. 2017 WL 3495213, at *23-24 (S.D.N.Y. Aug. 11, 2017); see also Vasquez v. Colvin, No. 14-CV-7194 (JLC), 2015 WL 4399685, at *20 (S.D.N.Y. July 20, 2015) (treating relationship found where doctor met with patient four times, doctor referred patient to other specialists for further treatment and testing, and doctor wrote brief note confirming patient's

impairments); Harrison v. Sec'y of Health & Hum. Servs., 901 F. Supp. 749, 755 (S.D.N.Y. 1995) (physician who saw plaintiff four times was considered a treating source where she "diagnosed plaintiff and referred her for various tests and treatment"); Snell, 177 F.3d at 130 (treating relationship found where doctor met with claimant three times); Vargas, 898 F.2d at 294 (applying treating physician rule where doctor saw patient for only three months).

Here, not only did Govan visit Dr. Moran five times over the span of about nine months, but Dr. Morice also diagnosed Govan with various ailments, referred her for x-rays for those ailments, and tracked her progress for a sustained period of time. Defendant also does not dispute that Dr. Morice is Govan's treating physician. Def.'s Br. at 14. Furthermore, both the ALJ and the Appeals Council recognized Dr. Morice as a treating physician. R. at 776, 901.

The ALJ gave Dr. Morice's opinion "little weight." R. at 786-87. But in concluding that Dr. Morice's opinion was entitled to little weight, the ALJ did not discuss any of the Burgess factors or otherwise provide good reasons for his decision to afford her opinion little weight, despite her role as Govan's treating physician. Instead, the ALJ set forth his reasoning in four sentences, without any indication that he considered each of the Burgess factors. See Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ failed to consider factors such as the length, nature, and extent of the treatment relationship between Govan and Dr. Morice. Nor did the ALJ discuss whether Dr. Morice's opinion was consistent with the record as a whole. As to those factors, the ALJ's decision is silent. The ALJ also did not discuss the evidence in the record that supported Dr. Morice's opinion. Other than indicating that he had obtained Dr. Morice's treatment records, the ALJ did not discuss any of those records or the information contained therein. R. at 776, 786-87. The ALJ did not address Dr. Morice's diagnosis of fibromyalgia, or that the treatment notes indicated that

Govan had a reduced range of motion in her shoulders and hips, stiffness, reduced muscle strength in the biceps and triceps, tenderness in the "cervical paraspinals," and "greater trochanter bilaterally." Id. at 499-502, 529-49, 1469. While the ALJ need not have expressly discussed each factor, it should have been clear from his decision that he considered each factor. See, e.g., Camacho v. Colvin, No. 15–CV–7080 (CM) (DF), 2017 WL 770613, at *22 (S.D.N.Y. Feb. 27, 2017) ("[W]hen an ALJ decides to give less than controlling weight to the opinion of a treating source, the ALJ's consideration of each of those factors must be transparent . . . . ") (internal quotation marks omitted). Here, however, it is not clear from the ALJ's reasoning that he considered such factors as the nature of the relationship, the frequency of the examinations performed by Dr. Morice, or the evidence in the record supporting Dr. Morice's opinion.

Where, as here, the ALJ did not address the relevant Burgess factors, the Court must remand the case for further consideration. See, e.g., Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 266-67 (S.D.N.Y. 2016) (ALJ's failure to consider factors such as specialization, nature of treatment relationship, and frequency of examination in assessing weight afforded to treating physician's medical opinion was grounds for remand); Ramos v. Comm'r of Soc. Sec., No. 13-CV-3421 (KBF), 2015 WL 7288658, at *7 (S.D.N.Y. Nov. 16, 2015) (remanding case where ALJ did not consider required factors such as specialization and length of treatment in weighing the opinion of treating physician); Hidalgo v. Colvin, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at *20 (S.D.N.Y. June 25, 2014) (ALJ's failure to refer to all factors when explaining weight given to treating psychiatrist's opinion was legal error); Halloran, 362 F.3d at 32 ("An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician *must* consider various 'factors' to determine how much weight to give to the opinion.") (emphasis added).

Moreover, the reasons provided by the ALJ for rejecting Dr. Morice's opinion do not constitute good reasons for affording the treating physician's opinion less than controlling weight. First, the ALJ stated that Dr. Morice's opinion that Govan's impairments would make Govan "miss all work more than three times per month is inconsistent with the overall record wherein 'all work' is not defined and Dr. Morice noted [Govan] was a private home health aid when injured in November of 2012." R. at 786. Although the ALJ characterizes Dr. Morice's opinion as stating that Govan would miss "all work," Dr. Morice's opinion does not say that. Instead, Dr. Morice opined that on average Govan's impairments and treatments would cause her to be absent from work activities "more than three times a month." Id. at 564. Furthermore, the ALJ attributes to Dr. Morice the statement that Govan "was a private home health aide when injured in November of 2012." Id. at 786. But that was not a statement by Dr. Morice; the statement was made by Licensed Clinical Social Worker Marcelino Guillen. Id. at 1373-76. Guillen made that statement in an initial assessment from April 5, 2018.

Second, in discounting Dr. Morice's opinion, the ALJ reasoned that it was unclear whether the "treatments" Govan needed would "include the physical therapy sessions three times per week." Id. at 786-87. If the ALJ needed more information about the nature of the treatments prescribed by Dr. Morice or believed that there was an inconsistency in the record concerning the prescribed treatments, the ALJ had an "affirmative duty to develop the administrative record," Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002), particularly as it relates to treating physicians like Dr. Morice, Ulyses Rojas v. Berryhill, No. 18-CV-190 (AWT), 2019 WL 2895670, at *4 (D. Conn. Mar. 26, 2019) ("The ALJ must request additional information from a treating physician . . . when a medical report contains a conflict or ambiguity that must be

resolved, or the report is missing necessary information . . . .") (quoting 20 C.F.R. §
404.1512(e)(1)).

Third, the ALJ found that Dr. Morice's opinion that Govan's impairments and treatments
will cause her to miss work "more than three days a week" was "inconsistent with unremarkable
objective imaging throughout the record despite allegations of pain that are consistent with the
claimant's limited range of motion in the record." R. at 786-87. The ALJ's assessment, however,
was conclusory. The ALJ did not explain *how* the opinion was inconsistent with the imaging
evidence in the record or even identify the imaging evidence being relied on. See Roman v. Saul,
No. 19-CV-3688 (JLC), 2020 WL 4917619, at *22 (S.D.N.Y. Aug. 21, 2020) (remanding
because the ALJ failed to "identify explicitly the medical evidence that was inconsistent with
[the treating physician's] opinions") (citing Sickler v. Colvin, No. 14-CV-1411 (JCF), 2015 WL
1600320, at *12 (S.D.N.Y. Apr. 9, 2015)) (conclusory statement that opinion is inconsistent with
evidence in the record "does not 'comprehensively set forth [the ALJ's] reasons for the weight
assigned to [the] treating physician's opinion'"); Brown v. Colvin, No. 15-CV-4823 (RLE), 2016
WL 5394751, at *12-14 (S.D.N.Y. Sept. 27, 2016) (remanding because ALJ engaged in
"conclusory reasoning" by failing to cite specific exhibits in the record while claiming that the
treating physician's opinion was not consistent with clinical findings in the record).

Fourth, the ALJ points to Dr. Morice's statement that "fibromyalgia generally does not
prevent a person from returning to work." R. at 369, 787. In that letter from August 26, 2014, Dr.
Morice recommended that Govan "undergo a detailed work evaluation by a physical or
occupational therapist" if "a more detailed evaluation is required to determine which specific
activities Ms. Govan is able to perform." Id. at 369. Although Dr. Morice opined that Govan may
be absent from work activities "more than three times a month," id. at 564, that conclusion,

contrary to the ALJ's characterization, was not based solely on Govan's fibromyalgia. Dr.

Morice also considered Govan's other impairments in reaching that conclusion. Id. at 560.

In sum, the ALJ improperly afforded less than controlling weight to Dr. Morice's opinion

without giving good reasons for doing so and without having considered all required factors.

Accordingly, a remand for further proceedings is warranted.

## **CONCLUSION**

For the foregoing reasons, Govan's motion for judgment on the pleadings is **GRANTED,**

and the Commissioner's cross-motion for judgment on the pleadings is **DENIED**. The Clerk of

Court is respectfully directed to terminate the motions at ECF Nos. 24 and 28.

DATED:      February 6, 2024
           New York, New York

Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge